UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HAIRSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 15-1054-JDT-egb |
| | ) | |
| DERRICK SCHOFIELD, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

ORDER PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT
PROCESS BE ISSUED AND SERVED ON DEFENDANT COX

On February 12, 2015, Plaintiff James Hairston ("Hairston"), who was formerly an inmate at the Hardeman County Correctional Facility ("HCCF") in Whiteville Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis* in the United States District Court for the Middle District of Tennessee. (ECF Nos. 1 & 2.) Because Plaintiff is a "three strikes" filer under 28 U.S.C. § 1915(g), United States District Judge Kevin H. Sharp initially denied leave to proceed *in forma pauperis* on February 19, 2015. (ECF No. 3.) After Plaintiff sought reconsideration in a letter docketed March 9, 2015 (ECF No. 7), Judge Sharp vacated the prior order, granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b). (ECF No. 8.) Judge Sharp also transferred the case to this district (*id.* at 3), where it was docketed on March 16, 2015 (ECF No. 9). The Clerk shall record the Defendants as Tennessee Department of Correction ("TDOC") Commissioner Derrick Schofield; Jason Woodard, TDOC Deputy Commissioner of Operations (*see* ECF No. 1-1 at 9, 17); TDOC Medical Director Michael Lewis; former HCCF Warden Michael Donahue;

HCCF Assistant Warden Mitchell Bradshaw; HCCF Medical Administrator Alicia Cox; HCCF Disciplinary Hearing Officer Y. Futrelle; and HCCF Correctional Officers Melvie Parson, K. Joy, R. Flint, and A. Hembree.

## I. THE COMPLAINT

In his complaint, Hairston alleges denial of medical care amounting to cruel and usual punishment, denial of due process, and denial of access to the courts. (ECF No. 1.) Hairston alleges that, prior to his incarceration, he was involved in a motor vehicle accident which left him with serious medical conditions. (*Id*. at 7). Hairston alleges that while he was incarcerated at the Bledsoe County Correctional Complex ("BCCX"), it was determined that he should be classified with specific medical restrictions and be on a prescribed medical diet. (*Id*.) When Hairston later was transferred to the HCCF, which is managed by Corrections Corporation of America ("CCA"), he allegedly was told that he needed to pay to have his medical needs evaluated before he could be provided a modified diet. (*Id*. at 8). Hairston filed grievance #24348/273977, related to his medical issues, on March 18, 2014. (ECF No. 1-1 at 7-8.) In response, Warden Donahue agreed with the Grievance Board's recommendation to contact the BCCX for Hairston's medical records and a copy of the prescribed diet, and issued a directive to Cox to do so. (*Id.* at 18-20, 22.) Hairston alleges that Defendant Cox did not comply with the board's recommendation, resulting in the continued denial of Hairston's prescribed diet. (ECF No. 1 at 8.) Hairston contends that he sent numerous letters to Defendants Bradshaw and Donahue in reference to his medical issues. (*Id*.)

On August 11, 2014, Hairston filed a second grievance, #25360/280636, detailing the continued denial of medical care. (ECF No. 1-1 at 12-13.) On September 17, 2014, the Grievance Board recommended that Cox be instructed to follow the Warden's directive from the

2

earlier grievance, #24348/273977. (*Id.* at 10.) However, Warden Donahue issued a directive to Asst. Warden Bradshaw on September 19, 2014, for Hairston to be seen by a medical provider on September 23, 2014, to review the needed medical diet. (*Id.* at 16.) Hairston alleges that a health care provider at HCCF ordered the prescribed diet for Hairston, but the food service staff was unable to meet the requirements. (ECF No. 1 at 9.) Hairston asserts, although no documentation is provided, that he filed another grievance, #25487/281946, in response to which the grievance board recommended reasonable efforts be made to accommodate Hairston. (*Id.* at 10). Hairston alleges that he sent numerous letters to Defendant Lewis regarding the situation, but Lewis did nothing. (*Id.*) Hairston alleges that HCCF continued to refuse his prescribed diet. (*Id.*) Due to the lack of a nutritionally balanced meal, he alleges that he lost significant weight and was often sick and weak. (*Id.* at 9.) Hairston also alleges that his abdominal hernias grew worse, causing pain and discomfort that affected his ability to eat, sleep, walk, stand or sit up for extended periods of time. (*Id.* at 10.)

Hairston's second claim is for alleged retaliation by Defendant Parson. Hairston alleges that on November 27, 2014, Defendant Parson gave Hairston a regular sack meal instead of the modified sack meal the food supervisor had indicated would be prepared for him in accordance with his dietary restrictions. (*Id.* at 11). Hairston alleges that when he explained to Parson that he should have been given a substitute sack meal, Defendant Parson called him a liar, used profanity, and slammed the cell door in his face. (*Id.*) Less than an hour later, another correctional officer verified Hairston's request with the food service department. (*Id.*) On November 28, 2014, Hairston filed a grievance against Defendant Parson because of her behavior. (*Id.*)

On December 28, 2014, allegedly in retaliation for the grievance filed against her, Parson threatened to file formal disciplinary charges against Hairston for having his electronic gaming system in the dayroom, which he contends was allowed by HCCF policy. (*Id.* at 11.)[1] On December 30, 2014, again allegedly in retaliation for the grievance he filed against her, Defendant Parson refused to allow Hairston to use the restroom during a routine cell inspection, despite his emergency need. (*Id*. at 11-12). Hairston entered his cell to use the restroom anyway, and when Parson asked him why he going into his cell he told her he could not wait until after she inspected all 56 cells in the housing area. (*Id*. at 12) Parson then allegedly initiated formal disciplinary action against Hairston for disobeying her order not to use the restroom, but other inmates who were using the restroom during the cell check were not subjected to the same discipline. (*Id.*) Hairston sent letters to Defendants Donahue, Schofield, Woodard and Bradshaw regarding Parson's alleged behavior, but received no responses. (*Id*.)

Hairston alleges that he was denied due process in the disciplinary hearing held on January 20, 2015, when Defendant Futrelle, the disciplinary hearing officer, told him she was going to find him guilty of the charges in any event and threatened to impose the harshest punishment if he did not plead guilty. (*Id*.) In order to avoid the harsher punishment, Hairston did plead guilty. (*Id.*) On January 22, 2015, while waiting for HCCF staff to conduct another routine cell inspection, Hairston alleges he urinated and defecated on himself rather than risk further disciplinary charges by again disobeying orders and going to the restroom. (*Id.* at 12-13.)

Hairston further alleges that he was denied access to the courts when Defendants Joy, Hembree and Flint allegedly failed to mail Hairston's outgoing privileged mail. (*Id.* at 13.) He alleges that on September 14, 2014, he personally gave these Defendants privileged mail to be

---

[1] Plaintiff does not allege that Parson actually followed through on her threat to file disciplinary charges against him for having his gaming system in the day room.

sent out, consisting of affidavits in support of a claim he had filed with the Tennessee Claims Commission. (*Id.*) Hairston alleges the Tennessee Claims Commission denied his claim on November 7, 2014, stating that he had failed to file the necessary affidavits. (*Id.*) Hairston then alleges that Joy, Hembree and Flint withheld other, unspecified privileged mail between August 2014 and December 2014. (*Id.*)

On January 20, 2015, when Hairston again attempted to mail privileged legal documents, Joy, Hembree and Flint told him that HCCF policy allows indigent prisoners to mail only five ounces of legal mail per week, and his mail weighed thirteen ounces. (*Id.*) He further alleges that on February 3, 2015, Defendant Bradshaw told him the United States Postal Service was to blame for losing all of Hairston's legal and privileged mail. (*Id.*)

Hairston seeks injunctive relief, including immediate examination by a qualified physician, provision of the prescribed diet, and expungement of the disciplinary convictions. Hairston also seeks compensatory and punitive damages against Defendants Cox, Parson, Futrelle, Joy, Hembree and Flint. (*Id.*)

## II. ANALYSIS

A. <u>Screening and Standard</u>

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as

5

stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  § 1983 Claim

Hairston filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects,

> or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

"Article III of the Constitution limits the judicial power to the adjudication of 'Cases' or 'Controversies.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007) (citing U.S. Const., art. III, § 2). This is "a cradle-to-grave requirement that must be met in order to file a claim in federal court and that must be met in order to keep it there." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011). "[A] federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (internal quotation marks omitted); *see also Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) ("Under the 'case or controversy' requirement, we lack authority to issue a decision that does not affect the rights of the litigants."); *Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001) (same). The mootness question turns on whether a federal court can afford a litigant any "effectual relief." *Coalition for Gov't Procurement*, 365 F.3d at 458.

After the filing of the complaint, Plaintiff submitted a change of address showing that he is now incarcerated in Virginia, not at the HCCF. (ECF No. 14.) Therefore, Plaintiff's prayers for injunctive relief concerning his medical care at the HCCF, in which he seeks immediate medical treatment, and to be provided a medically-prescribed diet, are moot. *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003) (claims for declaratory and injunctive relief against prison staff moot when inmate transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same); *Tramber v. Pleasant*, No. 4:12CV-P31-M, 2012 WL 4594339, at *5 (W.D. Ky. Oct. 2, 2012) (inmate's claim for a transfer and medical care moot when he was transferred to another facility).

Plaintiff sues TDOC Defendants Schofield, Woodard and Lewis solely in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). Any claims against the aforementioned Defendants in their official capacity are asserted against the State of Tennessee.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection &*

*Advocacy v. Stewart*, ___ U.S. ___, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71. Therefore, the claims against Defendants Schofield, Woodard and Lewis are barred.

Hairston sues Defendant Bradshaw only in his official capacity; Defendants Donahue, Cox, Futrelle, Joy, Flint and Hembree are sued in both their official and individual capacities. The official capacity claims against these CCA employees must be construed as claims against CCA itself. *Cf. Will*, 491 U.S. at 71. However, the complaint does not assert a valid claim against CCA. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CCA, Hairston "must show

that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.* The complaint does not allege that Hairston suffered any injury because of an unconstitutional policy or custom of CCA.

It is clear that Hairston sues Defendant Donahue because he was the Warden of the HCCF. Under 42 U.S.C. § 1983, prison officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. *See also Mitchell v. Hininger*, 553 F. App'x 602, 607-08 (6th Cir. 2014) (applying same analysis to CCA supervisory employees).

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official, who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative

complaint about a completed act of misconduct does not."). The complaint does not allege that Defendant Donahue, through his own actions, violated Hairston's rights.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler,* 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'. . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id*. at 106.

Within the context of *Estelle* claims, the objective component requires that the medical need be sufficiently serious. *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)).

To make out a claim of an Eighth Amendment *Estelle* violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). The Court clarified the meaning of deliberate indifference in *Farmer v. Brennan* as the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. 511 U.S. at 835-36. For purposes of screening, Hairston has alleged a plausible claim for violation of the Eighth Amendment against Defendant Cox.

Hairston's claim against Defendant Parson, although titled "Cruel and Unusual Punishment," is, in effect, a claim that Parson retaliated against him for exercising his First Amendment right to file a grievance. "Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (same); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (same). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Smith*, 250 F.3d at 1037. A finding of guilt on the underlying misconduct satisfies the Defendant's burden of showing that an allegedly retaliatory disciplinary charge would have been brought even in the absence of the protected conduct. *See Wilson v. Wellman*, No. 99-2377,

2000 WL 1829265, at *2 (6th Cir. Dec. 6, 2000); *Robinson v. Shewalter*, No. 00-3211, 2000 WL 1829118, at *2 (6th Cir. Dec. 6, 2000); *Owens v. Johnson*, No. 99-2094, 2000 WL 876766, at *2 (6th Cir. June 23, 2000).

Hairston alleges that Defendant Parson ignored him during a routine cell inspection when he told her he urgently needed to use the restroom, then brought a disciplinary charge against him when he entered his cell to do so, disobeying her order not to enter the cell. (ECF No. 1 at 11-12.) Hairston contends that Defendant Parson's refusal was predicated upon the grievance he filed against her for failure to provide him with the appropriate sack meal. (*Id.* at 11.) Hairston concedes that at the disciplinary hearing he pled guilty to the charge of disobeying an order. (*Id.* at 12.) While he alleges the guilty plea was coerced, Hairston does not deny that he did, in fact, disobey Parson's order. He merely contends he had a good reason for his actions. However, Hairston does not allege that his urgent need to use the restroom necessarily would have precluded the hearing officer from finding him guilty on that charge in the absence of his guilty plea. Thus, Hairston has no valid retaliation claim.

Hairston also has no claim for a violation of due process in connection with the disciplinary hearing. As indicated, Hairston alleges that his due process rights were infringed by Defendant Futrelle when she allegedly coerced him into pleading guilty by threatening to find him guilty anyway and impose a harsher penalty. An inmate's right to due process arises only if a restriction implicates a constitutionally protected liberty interest. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that, where a prisoner is charged with a disciplinary offense that may result in loss of good time credit, due process requires certain procedural protections. *Id.* at 563-66. In addition, a disciplinary proceeding may give rise to a protected liberty interest if the restrictions imposed

constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). In general, an inmate does not have a liberty interest in a particular security classification or in freedom from segregation. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). In this case, Hairston does not allege that he lost good time credit or that the punishment he received was the type of "atypical and significant hardship" contemplated in *Sandin*.

Finally, Hairston has no claim for denial of access to the courts. Hairston alleges that on September 15, 2014, he gave Defendants Joy, Flint and Hembree privileged legal mail, consisting of certain affidavits, to send to the Tennessee Claims Commission. The Claims Commission subsequently denied his claim, stating that Hairston had filed no affidavits. Hairston summarily concludes from that denial that the Defendants failed to mail the documents as requested. Hairston further alleges that between August 2014 and December 2014, the Defendants also failed to mail other privileged documents to unspecified state and federal officials, in which Hairston complained about his lack of medical care.

The mere fact that Plaintiff's affidavits failed to reach the Tennessee Claims Commission is insufficient, without more, to support a claim that Defendants Joy, Flint and Hembree failed to mail those documents. Likewise, the conclusory statement that Defendants failed to mail other privileged documents is unsupported by any facts and is, therefore, insufficient to state a claim for denial of access to the courts.

On January 20, 2015, Hairston was told his privileged documents could not be mailed because of a TDOC policy specifying that indigent prisoners could send no more than five ounces of legal mail per week at TDOC expense, and his documents weighed thirteen ounces. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that states must assure all

15

prisoners have meaningful access to the courts, which requires providing postage to mail legal documents; however, economic factors may be considered if the cost is not a justification for total denial. *Id.* at 824-25. Thus, prisons may implement policies establishing an upper limit on the amount of postage provided to indigent prisoners. *See, e.g., Bell-Bey v. Williams,* 87 F.3d 832, 839 (6th Cir. 1996) (allotting an indigent prisoner ten stamps per month to send sealed mail without inspection by prison officials met the affirmative duty to provide access to the courts). Hairston does not deny that the legal mail he attempted to mail in January 2015 exceeded the weekly weight limit of five ounces.

III. CONCLUSION

The Court DISMISSES Hairston's complaint against Defendants Schofield, Woodard, Lewis, Donahue, Bradshaw, Parson, Futrelle, Joy, Flint and Hembree for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Process will be issued for Defendant Cox on Hairston's Eighth Amendment claim for denial of medical care.

It is ORDERED that the Clerk shall issue process for Defendant Cox and deliver that process to the U.S. Marshal for service. Service shall be made on Defendant Cox pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Hairston shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendant Cox or on Defendant Cox if she is

unrepresented.  Hairston shall make a certificate of service on every document filed.  Hairston shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[2]

Hairston shall promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

                                                   s/ **James D. Todd**
                                                   JAMES D. TODD
                                                   UNITED STATES DISTRICT JUDGE

---

[2] A copy of the Local Rules may be obtained from the Clerk.  The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.